**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| GERALD FAULK, | : | Civil Action No. 14-5915 (JBS) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| JOHN J. POWELL, *et al.*, | : |  |
|  | : |  |
| Respondents. | : |  |

APPEARANCES:

Gerald Faulk
Bayside State Prison
P.O. Box F1 4293
Route 47
Leesburg, NJ 08327
        Petitioner, *pro se*

Stephanie Davis-Elson
Hudson County Prosecutor's Office
Administration Building
595 Newark Avenue
Jersey City, NJ 07306
        On behalf of Respondents.

**Simandle, District Judge**

## I.    INTRODUCTION

Petitioner Gerald Faulk ("Petitioner") has filed a *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  For the reasons explained in this Opinion, the Court will deny the Petition and will also deny a certificate of appealability.

**II. FACTUAL BACKGROUND & PROCEDURAL HISTORY**

    **A.    FACTUAL BACKGROUND**

Petitioner's conviction stemmed from a series of home invasions and armed robberies that Petitioner and his then-girlfriend committed over the course of a few months in Jersey City, New Jersey. The factual background in this matter was summarized in part by the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal.[1] (ECF No. 6-12 at 2-5.)

The first offense occurred on June 20, 2007, when a black male who was later identified as Petitioner, entered the victim's apartment, and took $200 and a wristwatch while holding a knife to the victim's throat. (*Id.* at 2-3.) The victim reported the incident to the police but was not able to make a photographic identification of the suspect. Two days later, on June 22, 2007, another victim observed a male enter his home, tell him that he was "gonna pay" and assaulted him causing a fractured jaw and nose. (*Id.* at 3.) Shortly thereafter, the victim of the second incident, informed the investigating detectives that the perpetrator's street name was "Wise" and identified Petitioner in a photograph array. (*Id.*)

Just over a month later on August 8, 2007, a third victim was robbed in her apartment. (*Id.* at 4.) She, along with a neighbor,

_____

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C. § 2254(e)(1).

were able to describe the perpetrator as well as a woman who was also in the vicinity at the time of the incident. (*Id.*) Realizing the similarities between the most recent robbery and the two which occurred in June, detectives asked the latest victim to identify the perpetrator using a book of photographs of black males that included a photograph of the Petitioner. (*Id.*) The victim identified the Petitioner with certainty. (*Id.*) On August 14, 2017, the first victim's apartment was burglarized. (ECF No. 6-37 at 15.) The victim was at work at the time of the incident and there did not appear to be any witnesses. (*Id.*) The police did not identify Petitioner as a suspect in this incident. (*Id.*) Nonetheless he confessed to this burglary in a police interview. (*Id.*) On August 31, 2007, the first victim was robbed again at knife point in his apartment. (ECF No. 6-12 at 4.) This time, his wife and daughter-in-law walked in on the robbery. (*Id.*) Additionally, the victim's daughter-in-law and a neighbor both observed a woman standing outside of the building at the time of the incident. (*Id.*) Both Petitioner and his girlfriend were apprehended in the area where the fourth robbery occurred and were positively identified by victim and witnesses in a show-up identification procedure shortly thereafter. (*Id.* at 4-5.)

**B.    PROCEDURAL HISTORY**

Petitioner (alongside his co-defendant, Teshia Felix) was indicted on twenty-four counts which were as follows: four counts of robbery, five counts of burglary, three counts of possession of weapon for an unlawful purpose, three counts of unlawful possession of a weapon, three counts of conspiracy to commit robbery, three counts of aggravated assault, three counts of conspiracy to commit burglary, one count of theft by unlawful taking and one count of conspiracy to commit theft by unlawful taking. (ECF No. 6-2.)

Prior to entering a guilty plea, Petitioner made a request for a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine the admissibility of the witness identifications. (ECF No. 6-37 at 24.) The trial court heard arguments about why the *Wade* hearing was necessary. (ECF No. 6-37.) Trial counsel made a series of arguments concerning the police investigation that resulted in Petitioner's arrest including: (1) that the police never established a basis as to how the individual identified as "Wise" was in fact Petitioner; (*Id.* at 5); (2) that the police violated an Attorney General Guideline that recommends that detectives not involved in the investigation conduct some aspects of the investigation such as photo identifications; (*id.* at 8-10); and (3) that the show up procedure used after the final incident was suggestive. (*Id.* at 12-14.)

The prosecution responded that all of the witness identifications were permissible. They conceded that the first victim could not identify his assailant after the first incident. However, unbeknownst to the victim, his son observed a man that was later identified as the Petitioner outside of the victim's building around the time of the incident. (*Id.* at 23-24.) It was not until the son went to the police precinct after his father was robbed again in August, that he observed Petitioner sitting in the precinct, and told the police that Petitioner was the man he saw around his father's building on the day of the robbery in June. (*Id.*) The prosecution also responded that the victim of the second robbery, who identified Petitioner by his street name, "Wise", was familiar with Petitioner and was an acquaintance of Petitioner's girlfriend. (*Id.* at 16-17.) The prosecution further argued that the police's use of a photograph book containing photographs of all black males was not suggestive. Finally, the prosecution argued that the show up procedure was not suggestive and that it procured a reliable identification considering that it occurred moments after the actual incident while the witnesses' memory was most dependable. They also submitted that a show up procedure was used because two of the witnesses were undergoing post-traumatic shock and were in need of medical care. (ECF No. 6-37 at 22.) At the close of arguments, the trial court denied a *Wade* hearing.

Petitioner pled guilty to two counts of first degree robbery, one count of second degree aggravated assault, one count of second degree robbery and one count of third degree burglary. (ECF No. 6-6 at 1.) On April 28, 2009, the court entered a judgment of conviction ("JOC"), and Petitioner was sentenced to an aggregate eighteen-year term of imprisonment, subject to the No Early Release Act (NERA), N.J. STAT. ANN. § 2C:43-7.2, requiring Petitioner to serve 85% of the sentence without parole eligibility. (ECF No. 6-6 at 1-2.)

Petitioner appealed his conviction to the New Jersey Superior Court, Appellate Division on September 3, 2009, although appellate counsel has stated that Petitioner filed on May 14, 2009. (ECF No. 6-8 at 1-8.) On January 24, 2011, the Appellate Division affirmed the conviction. *State v. Faulk*, Indictment No. 07-12-2046, 2011 WL 204829 (N.J. Super. Ct. App. Div. Jan. 24, 2011). Petitioner sought certification from the New Jersey Supreme Court, but his petition was denied on July 14, 2011. *State v. Faulk*, 23 A.3d 413 (N.J. 2011).

Petitioner then filed a petition for post-conviction relief ("PCR") on August 15, 2011. (ECF No. 6-17.) The PCR Court denied relief on January 19, 2012, and Petitioner filed a late-notice of appeal on July 2, 2012. (ECF No. 6-29 at 3.) The Appellate Division affirmed the PCR court's decision on January 10, 2014. *State v. Faulk*, Indictment No. 07-12-2046, 2014 WL 87883 (N.J.

Super. Ct. App. Div. Jan. 10, 2014). On July 10, 2014, the New Jersey Supreme Court denied Petitioner's petition for certification. *State v. Faulk*, 94 A.3d 913 (N.J. 2014). Petitioner filed the instant petition for habeas relief under § 2254 on September 23, 2014. (ECF No. 1.) Petitioner raises two claims in which he asserts that he suffered ineffective assistance of trial and appellate counsel. (*Id.* at 35.) Respondents filed their full Answer. (ECF No. 6.) The matter is fully briefed and ready for disposition.

## III. STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett,* 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the
adjudication of the claim-

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of,
clearly established Federal law, as determined
by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim

on the merits, a federal court "has no authority to issue the writ

of habeas corpus unless the [state c]ourt's decision 'was contrary

to, or involved an unreasonable application of, clearly

established Federal Law, as determined by the Supreme Court of the

United States,' or 'was based on an unreasonable determination of

the facts in light of the evidence presented in the State court

proceeding.'"  *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012)

(quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1)

includes only the holdings, as opposed to the dicta, of [the

Supreme Court's] decisions," as of the time of the relevant

state-court decision.  *White v. Woodall*, 134 S. Ct. 1697, 1702

(2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

If a decision is "contrary to" a Supreme Court holding within 28

U.S.C. § 2254(d)(1), a federal habeas court may grant the writ

if the state court identifies the correct governing legal

principle from th[e] [S]upreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. Under 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") necessarily apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of corrections by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. 2254(b)(1)(A). To do so, a petitioner must "'fairly present'" all federal claims to the highest state court

before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d. Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d. Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3D 187, 196, 199 (3d Cir. 2007); see also *Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991))). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

## IV. ANALYSIS

The Petition raises two grounds for relief, both of which allege ineffective assistance of trial and/or appellate counsel. Respondents contend that the petition is without merit, or fails

to raise a claim of federal constitutional dimension that would entitle Petitioner to habeas relief. They argue that Petitioner couched state claims in the context of ineffective assistance of counsel claims for the purpose of federal habeas review.

For the reasons explained in this section, the Court finds that Petitioner's claims do not warrant federal habeas relief.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors deprived the defendant of a fair trial. *Id.* Ineffective assistance of appellate counsel is judged by the *Strickland* standard as well. *Albrecht v. Horn*, 485 F.3d 103, 137 (3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d 835, 840 n.4 (3d Cir. 2000)).

Counsel's performance is deficient if his or her representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In examining

the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id.*

Furthermore, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,", which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal

quotation marks and citations omitted).  "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"  *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).

### 1. Ground One: Ineffective Assistance of Trial Counsel for Failure to Adequately Prepare for *Wade* motion hearing.

Ground One of the Petition alleges that Petitioner was deprived of his Sixth Amendment right to effective counsel in that trial counsel was unprepared to argue a motion to suppress witness identifications.  (ECF No. 1 at 35.)  Petitioner's trial counsel filed a motion to suppress the identifications made by the witnesses to the police for the reasons discussed below.  At the motion hearing, Petitioner's trial counsel made several arguments as to why the pretrial identification procedures violated Petitioner's right to due process.  The trial court heard arguments from both parties prior to concluding that a *Wade* hearing would not be necessary.  Petitioner raised this claim in the course of his PCR proceedings.  (ECF No. 1 at 7.)  The PCR court denied the claim.

The PCR petition did not raise all of the due process claims associated with the identifications that were raised in the trial court. Nonetheless, the PCR court held that Petitioner's ineffective assistance of trial counsel claim was meritless. It found that the hearing record reflected that trial counsel raised many of the arguments that Petitioner considered important for the trial court to consider. As to Petitioner's first claim that trial counsel's failure to investigate how the police linked him to the street name "Wise" affected the court's *Wade* hearing denial, the PCR court first highlighted that trial counsel raised this claim at the hearing. Moreover, the PCR court determined that Petitioner did not establish what effect further investigation of this matter by trial counsel would have had, particularly because this information is not salient to a court's decision to grant a *Wade* hearing. (ECF. No. 6-28 at 4.)

As to Petitioner's second argument that trial counsel failed to compel discovery of the photograph book that was used by witness Sue Harris to identify Petitioner, the PCR Court found that "[s]uch a motion would have been futile, as the State did not possess any additional discovery." (ECF No. 6-28 at 5.) The Appellate Division agreed. (ECF No. 6-33 at 7.) Finally, the PCR court addressed Petitioner's claim that trial counsel's purported failure to properly investigate and compel discovery of information such as the details of the show up identification

procedure resulted in the *Wade* hearing denial. The PCR court found that the record reflected that the prosecution did not possess further discovery and that trial counsel's efforts would have been futile. (ECF No. 6-28 at 5.)

The Appellate Division concurred with the PCR court's finding that Petitioner did not demonstrate how counsel's performance was deficient thus failing to make a prima facie ineffective assistance of counsel claim.

> We are convinced that the record fully supports the PCR court's determination. As the court found, defendant failed to establish that his attorney was deficient in his handling of the *Wade* hearing. Defendant's claims are based on "bald assertions," which are insufficient to establish that he was denied the ineffective assistance of trial counsel. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999).

(ECF No. 6- 33 at 7-8.)

A review of the hearing transcript clearly indicates that counsel was familiar with the investigation and that counsel addressed the various perceived investigatory errors, including how they conducted their identification procedures and the allegedly questionable manner in which Petitioner was linked to the second incident. Ultimately, the record does not support Petitioner's assertion that counsel was unfamiliar with the record or unprepared. As the record does not support Petitioner's contention that counsel was unprepared or unfamiliar with the case,

and as Petitioner has otherwise failed to provide any facts that support allegations of prejudice as described below, Petitioner has failed to show that he is entitled to federal habeas relief on this claim. The state court's decision was not an unreasonable application of federal law.

It is worth noting that the legal framework for analyzing the reliability of eyewitness identifications is the two-part *Manson/Madison* test. *See Manson v. Brathwaite*, 432 U.S. 98 (1997); *State v. Madison*, 536 A.2d 254 (N.J. 1988). The first step in this test requires courts to determine whether the police identification procedures were impermissibly suggestive. If the first prong is met, the court then weighs the five reliability factors to decide if the identification is admissible. *See Manson*, 432 U.S. at 114; *Madison*, *supra*, 109 536 A.2d at 258-59. "An impermissibly suggestive identification procedure can occur in four settings: a show-up, a photo array, a line-up and in court." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).

At the motion hearing, Counsel first argued that neither the victim of the first incident nor his son, could identify a suspect when they were taken to the police station on the day of the attack. (ECF No. 6-37 at 16.) The government conceded that the victim could not identify his attacker after the first incident. Notwithstanding this, they argued that the victim's son was able to identify the Petitioner when he happened to encounter him at

the police station after his father was robbed a second time, close to two months later. (*Id.* at 23-24.) The victim's son happened to pass Petitioner, who was recently arrested for the most recent robbery, as he was heading to see his father at the police station. (*Id.* at 23.) The witness's observation of the Petitioner was by coincidence, not in a formal identification procedure. *See United States v. Greenstein*, No. 07-3652, 2009 WL 1090284, at *263-64 (3d Cir. Apr. 23, 2009) ("[witness] recognized [defendant] by coincidence, not as part of a formal identification procedure-nor one that was unnecessarily suggestive."))

Trial counsel next argued that the police did not establish how they linked Petitioner to the street name "Wise", the name that was provided to the police by the victim of the second offense. The prosecution agreed that it was not established how police made the connection between the street name and Petitioner. However, the second victim claimed to be familiar with Petitioner and to be an acquaintance of Petitioner's girlfriend. Petitioner raised this issue in his PCR Petition. (ECF No. 6-19 at 14-15.)

Petitioner's trial counsel next argued that the police violated the *Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedure* ("Guidelines"). New Jersey adopted the United States Department of Justice's recommendations to enhance accuracy and reliability of eyewitness evidence in criminal proceedings. *State v. Herrera*,

187 N.J. 493, 512 (2006) (citing Letter from Attorney General John J. Farmer, Jr. to All County Prosecutors et al. of Apr. 18, 2001, at 1)). Among other things, the Guidelines provide:

> In order to ensure that inadvertent verbal cues or body language do not impact on a witness, whenever practical, considering the time of day, day of the week, and other personnel conditions within the agency or department, the person conducting the photo or live lineup identification procedure should be someone other than the primary investigator assigned to the case. In those cases, where the primary investigating officer conducts the photo or live lineup identification procedure, he or she should be careful to avoid inadvertent signaling to the witness of the "correct" response.

*Id.* at 516.

When determining whether to suppress a suggestive out-of-court identification, a court first asks whether the photographic identification was "unnecessarily or impermissibly suggestive." *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991) (internal quotation marks omitted). This is determined by the actual suggestiveness of the identification and whether there was a good reason for the failure to utilize less suggestive procedures. *Id.* If the identification is in fact unnecessarily suggestive, the Court will look to see whether it was so much so that it gave rise to a substantial likelihood of misidentification amounting to a violation of due process. *Id.*

Here, the hearing record reflects that Detective Brodie, who was in fact assigned to the third incident connected with the then at-large Petitioner, which occurred on August 8, 2007, was also the investigator that showed the victim of the third incident the book of photographs containing potential suspects. (ECF No. 6-37 at 8.) At the hearing, the government responded that Detective Brodie's involvement was inconsequential because the Guidelines' prohibition on the investigating detective conducting the identification, applies to photograph lineups and the procedure used here was a photograph book viewing. (*Id.* at 19.)

Assuming arguendo that the identification procedure was in fact a photograph lineup, Petitioner's claim still fails. The hearing record reflects that Detective Brodie's report includes a description of the photo identification procedure employed.

> And when you read the police reports from Detective Brodie, Your Honor, he says, I give them each the book, I separate, I walk away, where I can still see them and I let them take a look at the books. And that is, at that time, that the victim, Sue Harris calls him over and points at a photo that – of – it ends up being the Defendant, and says, on a scale of one to ten, I'm positive as to a nine, that this is him.

(*Id.* at 19.)

Detective Brodie's description of the identification procedure was consistent with the *Guidelines*. After giving the photograph book to the witness, he physically distanced himself

from them and allowed for them to take the time they needed to make an identification and call for him to return. The record is silent as to how many photographs were in the book or what physical similarities they shared other than being black males, and neither trial counsel nor the judge raised this issue. In his PCR petition, Petitioner argued that trial counsel failed to compel discovery of the photo book to determine whether it was suggestive. (ECF No. 6-19 at 15-16.) However, Petitioner has not met his burden of showing how counsel's allegedly deficient performance caused prejudice.

Finally, trial counsel argued that the show-up procedure conducted on the day of the last offense on August 31, 2007, was improper. A show-up identification procedure is "inherently suggestive" because "it suggests that the police think they have caught the perpetrator of the crime." *United States v. Brownlee*, 454 F.3d 131, 138 (3d Cir. 2006) (citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). Nonetheless, an identification procured as the result of a suggestive procedure does not automatically render the identification inadmissible, so long as it is sufficiently reliable. *Neil v. Biggers*, 409 U.S. 188, 199-201 (1972). The identification's reliability is determined by the totality of the circumstances, including: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness'[s] degree of attention; (3) the accuracy of the witness'[s] prior

description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation." *Brownlee*, 454, F.3d at 139 (citing *Neil*, 409 U.S. at 199).

Here, the victim of the final incident was fighting off the assailant in his home when his family walked in on the attack. After the assailant fled, the police were provided a description of both the male assailant and a woman who was standing near the home at the time of the attack. The suspects were apprehended the very same day in the neighborhood where the incident occurred and identified by witnesses almost immediately thereafter. Therefore, the circumstances surrounding the show-up indicate that it was a reliable identification by the victim and witnesses of the final incident that occurred on August 31, 2007.

Petitioner's trial counsel filed a motion to suppress the identifications made by the witnesses to the police for the aforementioned reasons. The trial court heard arguments from both parties prior to concluding that a *Wade* hearing would not be necessary. (ECF No. 6-37.) At the close of arguments, the court opined, "I tend to agree that from every- every fact that I've seen, I've seen absolutely nothing to indicate that there was any impermissibly suggestive procedures used by the officers in this case." (*Id.* at 24.)

For the reasons described above, Petitioner fails to show that he is entitled to federal habeas relief on Ground One.

### 2. Ground Two: Ineffective Assistance of Appellate Counsel for Failure to Challenge the Sentence on Direct Appeal

In Ground Two, Petitioner alleges that he was denied his Sixth Amendment right to counsel due to appellate counsel's failure to challenge the sentence as excessive. Petitioner first raised this ineffectiveness claim during the PCR proceeding. He does not make any legal or factual arguments to support this claim in the instant federal habeas petition.

In his PCR petition, Petitioner claimed that appellate counsel should have challenged the trial court's erroneous application of five aggravating factors, particularly factors three and nine, and that the resulting sentence was excessive. (ECF No. 6-19 at 19.) Additionally, Petitioner submitted that appellate counsel's failure to do so was inconsistent with Petitioner's intent to challenge his sentence as evidenced by the fact that the option "yes" is selected next to the "excessive sentence" claim on the "Public Defender's transmittal of appeal application." (*Id.* at 18.)

The Appellate Division's adjudication of Petitioner's ineffective assistance of appellate counsel claim was not contrary to the Supreme Court's holding in *Strickland*. The Appellate Division stated as follows:

Here, Defendant's plea agreement permitted
imposition of a twenty-year term of
incarceration, but the trial court imposed an
aggregate term of eighteen years.
Furthermore, the bargained-for term of up to
twenty years was substantially shorter than
the maximum sentence that could have been
imposed if defendant had been tried and found
guilty of all of the charged offenses. In
addition, as part of the plea agreement, the
State agreed not to seek imposition of an
extended term, and the sentences were run
concurrently, even though the facts may have
allowed the court to impose consecutive
sentences. We therefore conclude that the
record supports the PCR court's determination
that an excessive sentence claim would have
been baseless and defendant was not denied the
effective assistance of appellate counsel
merely because counsel did not raise that
claim in the direct appeal.

(ECF No. 6-33 at 8-9.)

In making its determination, the PCR Court noted the

following:

Here, the State developed substantial evidence
creating a strong case against Petitioner.
Multiple victims and witnesses were able to
identify Petitioner, Petitioner was found in
possession of the proceeds of one of the
crimes, Petitioner confessed to participation
on several charges, and co-defendant gave
statements to police incriminating
Petitioner. The crimes involved were separate
victims, separate dates and wholly separate
crimes warranting consecutive terms. Despite
this, counsel was able to negotiate a
favorable plea agreement and ultimately
Petitioner received the benefit of an
aggregate 18 year sentence on the controlling
case. Further, at the time of the plea
Petitioner indicated to this Court that he
understood the terms of the plea agreement,
that he was facing 20 years in State prison

23

> and would have to serve eighty-five percent
> pursuant to NERA.

(ECF No. 6-28 at 6.)

Even after applying five aggravating factors, the trial court sentenced Petitioner to a term that was two years less than the maximum term outlined in the plea agreement. Moreover, the trial court's application of factors three and nine, which Petitioner argued in the PCR proceeding are so interrelated to the goals of deterrence that they essentially doubly penalize the defendant, did not expose Petitioner to a sentence that violated the plea agreement. The trial court considered the pre-sentence report, victims' statements, counsels' arguments and relevant aggravating factors before sentencing Petitioner within the plea agreement terms. (ECF No. 6-40 at 5-20.)

This Court finds the state courts' determinations are not contrary to clearly established federal law or an unreasonable determination of the facts. *Smith v. Robbins,* 528 U.S. 259, 288 (2000)(internal citations omitted) (held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome")).

The Court finds that the state courts' application of federal law was not unreasonable.

## VI.   CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter.  *See* Third Circuit Local Appellate Rule 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made this Court will not issue a certificate of appealability.

## VII. CONCLUSION

For the reasons discussed above, Petitioner's habeas petition is denied and Petitioner is denied a certificate of appealability. An appropriate order follows.


**March 27, 2018**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge